### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO.  14-652-6** |
| | : | |
| **ALEJANDRO SOTELO** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                                                    **August 4, 2016**

Congress mandates persons convicted of distributing and importing 1 kilogram or more of heroin, even if they require special oral chemotherapy medication, must be incarcerated while awaiting sentencing unless we find a substantial likelihood we will grant a motion for new trial or acquittal or the United States Attorney consents and we find by clear and convincing evidence the convicted felon is not likely to flee or pose a danger to any person or the community.   As we lack clear and convincing evidence the convicted felon with no family in this District and many contacts in Mexico is not likely flee, we deny his motion for release to ensure he receives the correct pain medications and his present medical condition is stable.

I.       **Facts**

A. **The jury convicted Mr. Sotelo of distributing and importing one of more kilograms of heroin and money laundering.**

On May 6, 2015, the Grand Jury returned a Fourth Superseding Indictment charging Alejandro Sotelo with, among other things, conspiracy to distribute and import heroin and conspiracy to commit money laundering as part of a Mexico-based drug trafficking organization.[1] Mr. Sotelo remained released on bond residing in his Illinois home for several months pending trial.   Over the course of his pretrial release, Mr. Sotelo treated with his oncologist for a cancerous tumor.   Mr. Sotelo failed to appear for the first day of trial explaining he needed to obtain medicine from his Illinois oncologist.

He appeared one day later so we could begin his long scheduled trial. Attorney Vincent Solano, Jr. represented Mr. Sotelo during trial having being initially privately retained and then, swearing he no longer had funds, Mr. Sotelo sought special appointment of Attorney Solano on a Criminal Justice Act Panel reimbursement. Persuaded and relying upon Mr. Sotelo's sworn representations of no money to retain counsel, we approved Attorney Solano's representation under the Criminal Justice Act Panel to be reimbursed as warranted.

On April 22, 2016, the jury found Mr. Sotelo guilty of conspiracy to distribute and import one (1) kilogram or more of heroin and conspiracy to commit money laundering. The evidence established Mr. Sotelo as the highest ranking member of the Laredo Drug Trafficking Organization in the United States. He specifically received kilograms of heroin from Antonio Laredo in Illinois, sometimes as much as thirty-five (35) to fifty (50) kilograms of heroin a month. Mr. Sotelo renovated homes where he stashed kilograms of heroin between wall studs and behind drywall. Mr. Sotelo directed couriers to drive from Mexico to Chicago which included a car battery packed with approximately 3 kilograms of heroin and, at times, towed motorboats with marine batteries concealing kilograms of heroin. The jury also heard substantial evidence of Mr. Sotelo transporting bulk cash from Chicago to Mexico using vehicles with trap compartments.

Following the jury verdict, the United States sought immediate remand required by the jury's conviction.   Attorney Solano requested Mr. Sotelo be released pending sentencing. Following the United States' objection, we declined to release Mr. Sotelo. He remains in the custody of the United States Marshal at the Federal Detention Center in Philadelphia.

**B. Post-trial activity.**

Following the verdict, Mr. Sotelo found money and again privately retained attorney Michael Diamondstein.  We remain unclear as to how Mr. Sotelo, who lacked money for an

2

attorney when he was working, found money to privately retain an attorney once in custody. Mr.
Sotelo's wife, Carmelina, allegedly paid Attorney Diamondstein from her credit card but she also
plead guilty to her role in the money laundering part of this conspiracy and awaits her sentencing
scheduled for September 7, 2016.[2]

Mr. Sotelo's new privately retained attorney immediately filed another motion seeking
post-verdict release based upon Mr. Sotelo's health condition. Attorney Diamondstein argued
Mr. Sotelo's unique form of cancer requires a special medical protocol which the Federal
Detention Center cannot provide. We promptly held a phone conference advising we were not
inclined to release Mr. Sotelo but wanted to ensure the Federal Detention Center provided
appropriate medical treatment during his pre-sentence incarceration. After investigation,
Attorney Diamondstein withdrew his motion for release.

While his client remained ill in the Federal Detention Center, Attorney Diamondstein
awaited the full trial transcript and sought to continue our briefing schedule. He filed post-trial
memoranda this week. We will promptly review and decide his post-trial motion after reviewing
the United States' response.    Mr. Sotelo's lawyer has not consented to an earlier sentencing
which, should we remand him, will allow Mr. Sotelo to be transferred to the custody of the Bureau
of Prisons where he could be transferred to one of its designated medical facilities. As of now, Mr.
Sotelo must wait, at the earliest, for his September 8, 2016 sentencing at which time he may be
remanded to the Bureau of Prisons.

On July 24, 2016, Mr. Sotelo moved for immediate release asserting the prison is not
providing all of his pain or chemotherapy medication and had a fever requiring immediate
emergency room treatment. Mr. Sotelo complained about uncaring and unresponsive medical staff
because he had a fever on the evening of July 21, 2016 but received no response until the next

3

afternoon and the prison staff did not take him to an emergency room until Saturday, July 23, 2016. He complains about limited access to doctors. Attorney Diamondstein concedes counsel for the Federal Detention Center is responsive and working with Mr. Sotelo.

### C. Mr. Sotelo's post-verdict medical care.

Dr. Buschman performed intake on the first weekday of Mr. Sotelo's custody at the Federal Detention Center. Dr. Buschman reported on the chemo prescription cycles from the Illinois oncologist and was "going to make sure pain medication is properly continued until he can be assessed further."[3] The next day, Dr. Buschman reported "will con't short term pending 14-day eval and establishing cancer treatment with the [Bureau of Prisons]".[4] The following day (his third weekday in custody), a nurse practitioner detailed Mr. Sotelo's denying any side effects other than constipation and fatigue from complying with his medication.[5] Nurse Nelson further details Mr. Sotelo reporting his 2010 liver cancer diagnosis treated by surgery and oral chemotherapy. He unilaterally decided to stop the oral chemotherapy in 2013 but now has recurrence of cancer at the same site and restarted oral chemotherapy in February 2016. He told Nurse Nelson "[b]ecause of the chemo I must go to the hospital if I have fever… Last time I had a fever I was there x 10 days."[6]

On May 5, 2016, prison Dr. Dalmasi renewed his oral chemotherapy medicine.[7] On May 7, 2016, Mr. Sotelo met with Nurse Sogo for chest pain and received an EKG which returned unremarkable.[8] On May 9, 2016, Mr. Sotelo met with prison Dr. Dalmasi who offered him Tylenol for pain because the prison cannot prescribe hydromorphone.[9] Dr. Dalmasi advised an evaluation with a Philadelphia oncologist "will be issued as soon as we get his record because he was under treatment in Chicago and information is needed for the new oncologist."[10] The prison's Medication Administration Record confirms, and Mr. Sotelo does not dispute, delivery of

prescribed medicine to him through the pill line in April, May, June and parts of July.[11]

Philadelphia oncologist Dr. Jascha Rubin first evaluated Mr. Sotelo on June 21, 2016 and testified during our August 1, 2016 hearing.[12]   The United States Marshals transported Mr. Sotelo to Dr. Rubin on June 21, 2016.   Doctor Rubin confirmed Mr. Sotelo has a history of a tumor diagnosed in February 2010 for ongoing management of systemic metastasis with his care in Chicago. In February 2010, Illinois doctors resected a 5cm mass from his stomach and by 2011, a CAT scan showed no metastatic disease.   In March 2015, a CAT scan confirmed progression of a mass in his stomach and active liver lesions. In December 2015, Mr. Sotelo reported small disease progression in the liver.   At his June 21, 2016 examination, Mr. Sotelo denied nausea, vomiting, fevers, jaundice or weight loss but did suffer fatigue. Dr. Rubin found Mr. Sotelo's mood to be appropriate.   Dr. Rubin reported as to the chemotherapy protocol of twenty-one (21) days of medicine out of twenty-eight (28) days and requiring a repeat PET and CAT scan after this next cycle sometime between June 27 and July 5 after he completes the next twenty-one (21) day cycle on June 29, 2016.[13]   Nurse Nelson confirmed Dr. Rubin's direction with a followup required July 6 to 8, 2016.[14]

On July 20, 2016, the United States Marshal again transported Mr. Sotelo to see Dr. Rubin. Dr. Rubin found Mr. Sotelo's appearance "very pleasant, well developed, well nourished, Hispanic mail in no acute distress" with an appropriate mood.[15]   Dr. Rubin further found his PET and CAT scan showed ongoing masses in the abdomen and liver which an 8 cm. large mass compared to a 7.7 x 6.7 cm. mass in March of 2016.[16]   Dr. Rubin found "his disease is stable" as of July 20, 2016 and directed him to continue on the medicine and return in one (1) month.[17] Dr. Rubin confirmed Mr. Sotelo finished the first week of the twenty-one (21) days of oral chemotherapy treatment.[18]   Dr. Rubin further found Mr. Sotelo reported having "significant relief

from hand/foot syndrome" due to a multi-vitamin.[19]   Dr. Rubin did not report any concerns of the medical care provided at the Federal Detention Center.   Dr. Rubin prescribed continuing the oral chemotherapy and to return to him in one month.[20]

Late in the evening of July 21, Mr. Sotelo emailed Inmate Health Services reporting a high fever and asking for something to reduce the fever and advising "you guys know that I can't have any fevers if I do must go to ER".[21]   On July 22, Nurse Nelson evaluated Mr. Sotelo who reported "getting better thru the day."[22]   Nurse Nelson reported his temperature at 98.8 F. Nurse Nelson directed him to drink plenty of fluids, "return immediately is condition worsens" and gave him a night supply of motrin.[23]   The next morning, as directed, he returned to Nurse Hepner reporting a fever.   Upon examination, Mr. Sotelo presented a 100.7 F temperature with increased heart rate and blood pressure from the day earlier.[24]   The on-call physician directed transfer to Aria Hospital emergency room by van.   After time in the emergency room, the Marshals returned Mr. Sotelo.

On July 25, 2016, Dr. Rubin supplemented his July 20 notes in a letter to Mr. Sotelo's privately retained attorney describing a call with the prison nurse on July 22, July 23 explaining if Mr. Sotelo was suffering fevers, he should be sent to the nearest emergency department.[25]   Dr. Rubin then learned as of 2:30 on Friday afternoon, July 22, Mr. Sotelo had a normal temperature after meeting with the nurse practitioner after reporting he had a fever, his legs hurt, his feet swelled and he had a headache.   Mr. Sotelo met with prison Dr. Dalmasi on July 26, 2016 who renewed his prescriptions and reported a temperature of 97.0 F.[26]

Evidence introduced during our hearing confirmed a lapse of providing the oral chemotherapy from July 3 to July 19, 2016.[27]   Neither the Bureau of Prisons nor the United States can explain this lapse.   Dr. Rubin did not mention this lapse although he met with Mr. Sotelo on July 20 and he did not mention this lapse in his July 25 notes.   We have no evidence this lapse

caused any pain or harm to Mr. Sotelo. Mr. Sotelo also complains about not being able to receive appropriate pain medication. His Illinois physician recommended additional doses of morphine since Mr. Sotelo will not take Tylenol with codeine as offered to him. Mr. Sotelo's physician prescribes a particular type of pain killer which is not on the Bureau of Prisons formulary.

We evaluated the testimony of Dr. Rubin, the counsel for the Bureau of Prisons, and Mr. Sotelo during our extensive August 1, 2016 evidentiary hearing. Mr. Sotelo appeared alert and competently answered all questions concerning his care with his particular focus not receiving medicine when asked. The Bureau of Prisons explained, in great detail, how it provided Mr. Sotelo with his medication on a "pill line" twice a day. It adduced evidence of a daily receipt of his medicine other than a chemotherapy medicine in July, while he did receive pain medication at this same time. Nobody could explain why Mr. Sotelo would receive pain medication during this time but not the chemotherapy medication.

## II.   Analysis

Mr. Sotelo seeks release, with conditions, under Congress' mandate regarding release of convicted persons awaiting sentencing. Congress directs after a person has been found guilty of these drug offenses, this Court must detain him unless we find there is substantial likelihood of granting his motion for new trial or the United States has recommended no sentence of imprisonment and we find by clear and convincing evidence Mr. Sotelo is not likely to flee or pose a danger to any other person or the community.[28]

After careful consideration of the evidence, and mindful of Mr. Sotelo's continuing oncology treatments before, during and after the trial along with the representations of his oncologist, we cannot find grounds for release. With the benefit of the trial transcript and review of his memorandum, we find no substantial likelihood of granting his pending motion for new

7

trial. We hope to promptly rule on his motion after hearing from the United States. If we deny Mr. Sotelo's motion for new trial, we will begin the sentencing hearing on September 8, 2016, if not earlier. If he is remanded to custody, it is most likely Mr. Sotelo will be transferred to a Bureau of Prisons medical facility including one in North Carolina which may provide him with more specific onsite oncology medical care. The United States opposes release and has recommended a sentence of imprisonment based upon the jury's conviction of four (4) serious crimes, including three (3) involving heroin trafficking in this District.

We also cannot find Mr. Sotelo is not likely to flee or pose a danger. Mr. Sotelo's counsel could provide no assurances other than allowing us to impose conditions, including an ankle bracelet or other direct care in a hospital with twenty-four (24) hour United States Marshal monitor pending sentencing. While his medical care, particularly while continuing his ongoing battle with cancer is a concern if we were to find evidence of physical harm, we are concerned today with risk of flight. He is the highest ranking person in the United States subject to the Fourth Superseding Indictment. Unlike almost all others who have been apprehended, Mr. Sotelo elected to proceed to trial. He sat during the trial and heard days of evidence against him. The evidence shows his close personal relationship with the principals of the Laredo Drug Trafficking Organization and his ability to quickly get to Mexico or Illinois. We also remain perplexed by his ability to find money to pay a privately retained attorney when it suits him. Given his substantial ties to persons in Mexico and with his wife presently released on her own reconnaissance pending her sentencing, we have no assurance Mr. and Mrs. Sotelo will not immediately flee to Mexico.[29] Having been sick but continuing to engage in heroin trafficking since 2010, it is just as possible he could obtain such medical care in Mexico and live with his friends in the Laredo Drug Trafficking Organization. Mr. Sotelo did not present clear and convincing evidence leading us to believe he is

8

not likely to flee.

Mr. Sotelo's medical condition, as most recently reported by oncologist Rubin, is stable. We acknowledge the discrepancy in the delivery of his chemotherapy medication for certain days in July but, absent any medical testimony as to the effect upon him or causing him any harm, we cannot find grounds for release, even if we were to look for exceptional reasons in an appellate role.[30] The Bureau of Prisons' testimony is credible as to their efforts to ensure Mr. Sotelo receives his oral chemotherapy medication in a pill line, including e-mails to him with reminders and with specific efforts to take him to his doctor and to scheduled PET and CAT scans.

## III. Conclusion

Mr. Sotelo has battled cancer since 2010 with his most recurrence before our April 2016 trial. His most recent doctor's examination on July 20, 2016 confirmed his condition is stable. Mr. Sotelo has not established by clear and convincing evidence he is not likely to flee. We are not aware, and Mr. Sotelo has not shown us, any ability to protect against this risk and we are not aware of any grounds why we would grant extraordinary twenty-four (24) hour Marshal protection to make sure Mr. Sotelo receives medication when his doctor finds him stable.      In our accompanying Order, we deny Mr. Sotelo's motion for release and require a status memorandum as to the ongoing medical care provided to Mr. Sotelo.

---

[1] ECF Doc. No. 23.

[2] ECF Doc. No. 833.

[3] N.T. Aug. 1, 2016, Government Ex. 4.

[4] *Id.,* Government Ex. 5.

[5] *Id,* Government Ex. 6.

9

[6] *Id.*

[7] *Id.,* Government Ex. 7.

[8] *Id.*

[9] *Id.*, Government Ex. 8.

[10] *Id.*

[11] *Id.*, Government Ex. 14A, 14A-1, 14B.

[12] *Id.*, Government Ex. 9.

[13] *Id,* Government Exs. 9, 10.

[14] *Id.*, Government Ex. 11.

[15] *Id.,* Government Ex. 12.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.,* Government Ex. 13.

[21] *Id.,* Government Ex. 16.

[22] *Id,* Government Ex. 1.

[23] *Id.*

[24] *Id.*, Government Ex. 2.

[25] *Id,* Defendant's Ex. 1.

[26] *Id.*, Government Ex. 3.

[27] *Id.*, Government Ex. 14.

[28] 18 U.S.C. § 3143(a)(2).   Mr. Sotelo's counsel sought our consideration of Mr. Sotelo's release

under the "exceptional reasons" mandate applying to our Court of Appeals' review of our release or detention Order under 18 U.S.C. § 3145(c). We concur with Judge Beetlestone in finding the "exceptional reasons" required in 18 U.S.C. § 3145(c) applies to an appeal from an Order of a Magistrate Judge or this Court. *United States v. Castro*, No. 15-362, 2016 WL 3446660, *2-3 (E.D.Pa. June 23, 2016). Section 3145(c) specifically references appeals in which jurisdiction is granted to the Court of Appeals over final decisions of our Court. As we ordered detention on April 22, 2016 following the jury's verdict and today deny a motion for release, we find the exceptional reasons provisions of section 3145(c) does not apply to our review of our own detention orders.

[29] *United States v. Geerts*, 629 F.Supp. 830, 832 (E.D.Pa. 1985)(serious risk of flight before trial when defendant has no ties in the United States apart from a financial tie and the source of defendant's money and net worth are unknown, a court can conclude a bond would not provide reasonable assurance of appearance).

[30] Even if we applied the appellate standard under § 3145(c), "exceptional requires something 'out of the ordinary' to distinguish the defendant's case from those of [other defendants] subject to mandatory detention." *United States v. Epstein*, No. 14-287, 2016 WL 1435717, *2 (D.N.J. Apr. 12, 2016)(quoting *United States v. Salome*, 870 F.Supp. 648,653 (W.D.Pa. 1994)(further citations omitted)). Courts reviewing "exceptional reasons" have looked to the non-exclusive factors identified in *United States v. Garcia*, 340 F.3d 1013, 1018-22 (9th Cir. 2003). *Epstein*, at *2. The only *Garcia* factor arguably helpful to Mr. Sotelo is whether "the prison sentence would impose unusual hardships on a defendant, as in a defendant with serious illness or injury" recognizing each fact scenario must be separately evaluated. *Epstein*, at *2 (quoting *United States v. Koon*, 6 F.3d 561, 564 (9th Cir. 1993)(Rymer, J. concurring). The burden remains on Mr. Sotelo to show by clear and convincing evidence his continued detention is inappropriate based on exceptional reasons. *Epstein*, at 2 (citing *United States v. Stein*, No. 90-425, 1991 WL 97635 (E.D.Pa. 1991). Chronic medical conditions are not exceptional reasons justifying release. *E.g., United States v. Lieberman*, 496 F.Supp.2d 584, 587 (E.D.Pa. 2007) (seeking experimental treatment for paraplegia). "Exceptional reasons" requires courts look for a more acute need based on the inmate's condition. *See United States v. Spigner*, 416 F.3d 708, 713 (8th Cir. 2005)(trial court allowing continued pre-trial release due to need for dialysis treatment and surgery). Dr. Rubin confirmed Mr. Sotelo is stable. He is not facing any symptoms which cannot be treated at the Federal Detention Center. He does not prefer Tylenol with codeine but is offered alternative pain modalities. While we hope for his recovery, he has not shown us the symptoms of his illness are "exceptional reasons" requiring his release now for acute care not available from the doctors and nurses working with the Federal Detention Center. *United States v. Haugen*, No. 12-305(2), 2015 WL 2070703, *2 (D.Minn. May 4, 2015)(denying release when inmate claims prison is not providing the same medications given to her before custody and the record confirmed prison staff attempted to provide adequate care).

11