## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 14-652-6** |
| | : | |
| **ALEJANDRO SOTELO** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **June 14, 2018**

Convicted and sentenced for his central role in trafficking over a 1,000 kilograms of heroin and laundering millions of dollars in drug proceeds as affirmed by our court of appeals, Alejandro Sotelo *pro se* asks we vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He argues his trial and appellate counsel provided ineffective assistance of counsel depriving him of his Sixth Amendment right. Analyzed under the familiar standards defined by the Supreme Court in *Strickland v. Washington*, we deny Mr. Sotelo's motion.

### I. Background[1]

A grand jury returned a Superseding Indictment against the Mexico-based Laredo Drug Trafficking Organization ("DTO") led by fugitives Antonio Laredo and Ismael Laredo and thirty-five individuals including Mr. Sotelo. The Superseding Indictment charged the DTO conspired from 2008 to November 2014 to import and distribute over 1,000 kilograms of heroin in Philadelphia and launder millions of dollars in heroin proceeds.[2] The scheme briefly succeeded, in part, by concealing heroin in car batteries, car bumpers, vehicle traps, air compressors, and sealed fruit and vegetable cans. The Laredo DTO returned money to Mexico by use of concealed cash, bulk cash, Western Union and small wire transfers, and hiding money in specially equipped vehicles returning to Mexico.

The grand jury charged a conspiracy based on both importing and distributing heroin and then structuring the return of millions of dollars in illegal heroin proceeds through money laundering. Mr. Sotelo, based in Chicago, performed both roles in the conspiracy at a high level; the grand jury charged him with heroin trafficking through, among other things, receiving monthly shipments of heroin from Mexico, storing the heroin shipments in Chicago until directed by his long-time friend Antonio Laredo to deliver heroin to the Philadelphia area for distribution, and transferring money to Mexico to conceal and launder the illegal heroin sale proceeds. The Superseding Indictment charged Mr. Sotelo with conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 21 U.S.C. §§ 964, 960(b)(1)(A) (Counts 1 and 2); two counts of aiding and abetting and causing the distribution of one kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (Counts 14 and 20); and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count 44).

Mr. Sotelo lived in his Chicago, Illinois home for several months pending trial. Over the course of his pretrial release, Mr. Sotelo treated with his oncologist for cancer diagnosed in 2010. Mr. Sotelo hired Illinois attorney Vincent Solano. Attorney Solano entered his appearance, moving for *pro hac vice* admission to this Court. Philadelphia attorney Andrew F. Erba sponsored Attorney Solano's September 15, 2015 *pro hac vice* motion.[3] One month earlier, on August 11, 2015, a Magistrate Judge in this District appointed Attorney Erba to represent Mr. Sotelo's wife, Carmelina Sotelo, also charged in the Superseding Indictment.[4]

In early January 2016, we issued an order directing Attorney Solano and Attorney Erba, as local counsel moving Attorney Solano's admission to this Court, to appear and show cause why Attorney Solano's *pro hac vice* admission should not be revoked based on Attorney

2

Solano's failure to appear at two status conferences.[5] We also directed counsel to address whether Attorney Erba could represent both Mr. and Mrs. Sotelo.[6] Attorney Erba and Mr. Sotelo appeared at our January 22, 2016 show cause hearing, but Attorney Solano did not appear. At the hearing, we raised with Mr. Sotelo a concern regarding whether Attorney Solano could continue to act as his attorney. When we asked Mr. Sotelo if he wished to continue to retain Attorney Solano, Mr. Sotelo responded he did not wish to do so.[7]

Having failed to appear at the January 22, 2016 show cause hearing, we ordered Attorney Solano to appear and show cause in a telephone hearing regarding Mr. Sotelo's continued retention of Attorney Solano as counsel.[8] We held a call on February 3, 2016 with Attorney Solano, Mr. Sotelo, and the Assistant United States Attorney. Mr. Sotelo confirmed, under oath, he wanted Attorney Solano to continue representation.[9] Both Attorney Solano and Mr. Sotelo confirmed they had been in constant contact regarding the case and Mr. Sotelo confirmed he had no concern about Attorney Solano's ability to represent him before, and at, trial.[10]

On January 12, 2016, we scheduled trial involving Mr. Sotelo to begin on April 12, 2016.[11] Mr. Sotelo failed to appear on April 12, 2016. Attorney Solano appeared and told us Mr. Sotelo's worsening medical condition required a medication change scheduled for delivery to Mr. Sotelo's home in Chicago.[12] We postponed jury selection and the start of trial until the next day, April 13, 2016. Mr. Sotelo appeared on April 13, 2016 and, in his presence, we began jury selection and the first day of trial.[13] Mr. Sotelo, swearing he no longer had funds, then sought special appointment of Attorney Solano on a Criminal Justice Act Panel reimbursement during trial. He did not mention a concern with Attorney Solano during trial. Instead, he vouched for his services seeking our special appointment of Mr. Solano to our Criminal Justice Act Panel. Persuaded and relying upon Mr. Sotelo's sworn representations of no money to retain

3

counsel, we approved Attorney Solano's representation under the Criminal Justice Act Panel to be reimbursed as warranted.

The evidence at trial overwhelmingly confirmed Mr. Sotelo, a long-time friend of Antonio Laredo from their time together in Chicago, regularly distributed and transported, and directed multiple couriers to transport, multi-kilogram quantities of heroin from Chicago to the Philadelphia area. The evidence confirmed Sotelo picked up multiple payments of hundreds of thousands of dollars representing proceeds of heroin sales. Mr. Sotelo participated in and instructed the transport of heroin and the laundering of money through banking channels for the Laredo DTO. He received kilograms of heroin from Antonio Laredo in Illinois, sometimes as much as thirty-five (35) to fifty (50) kilograms of heroin a month. Mr. Sotelo renovated homes where he stashed kilograms of heroin between wall studs and behind drywall. Mr. Sotelo directed couriers to drive from Mexico to Chicago which included a car battery packed with approximately three kilograms of heroin and, at times, towed motorboats with marine batteries concealing kilograms of heroin. The jury also heard substantial evidence of Mr. Sotelo transporting bulk cash from Chicago to Mexico using vehicles with trap compartments.

Co-conspirators Joseph Torres and Bertin Torres Sanchez testified to ledgers they maintained tracking delivery of money and drugs (the "Ledgers"). The Ledgers reflect Mr. Sotelo transported drugs and money for the Laredo DTO. Mr. Torres testified to ledger entries recording bulk cash transfers to "Alex," identified as Mr. Sotelo, or his couriers.[14] On April 22, 2016, after eight days of trial, the jury found Mr. Sotelo guilty of conspiracy to distribute and import one kilogram or more of heroin and conspiracy to commit money laundering. [15]

Mr. Sotelo's counsel did not object to the proposed jury instructions submitted by the United States.[16] Mr. Sotelo's counsel did not move for judgment of acquittal at the close of the

4

United States' case.[17] Following trial, we ordered Mr. Sotelo committed to the custody of the United States pending sentencing.[18]

Retaining new counsel, Mr. Sotelo filed a post-trial motion seeking judgment of acquittal and for a new trial[19] and a motion for release pending sentencing citing his cancer diagnosis and required medical treatment.[20] We denied the motion for release[21] and motion for acquittal or for a new trial,[22] and sentenced Mr. Sotelo on September 6, 2016 to 210 months imprisonment, five years of supervised release, and a $400 special assessment.[23] Mr. Sotelo filed a timely appeal from the final judgment of sentence. The United States Court of Appeals for the Third Circuit affirmed the judgment and sentence on September 26, 2017.

On January 19, 2018, Mr. Sotelo moved *pro se* to reconsider his sentence seeking compassionate release due to his worsening cancer diagnosis.[24] We denied the motion because the Bureau of Prisons is required to seek compassionate release.[25]

Mr. Sotelo then filed the instant *pro se* motion under 28 U.S.C. § 2255. Mr. Sotelo is currently in custody at the Federal Medical Center in Butner, North Carolina receiving treatment for his medical condition.

## II. Analysis

Under *Strickland*,[26] Mr. Sotelo bears the burden of showing (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense."[27] Mr. Sotelo must demonstrate deficient performance and prejudice to have a valid claim for relief.[28]

To establish deficient performance of his trial counsel, Mr. Sotelo must show "counsel's representation fell below an objective standard of reasonableness."[29] There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[30] To establish prejudice, Mr. Sotelo must show "there is a reasonable probability

5

that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[31]

Mr. Sotelo's claim of ineffective assistance of appellate counsel is also examined under *Strickland*; he "must show that counsel's representation fell below an objective standard of reasonableness" and, for the prejudice prong, must show "that there is 'a reasonable probability ' – 'a probability sufficient to undermine confidence in the outcome,' but less than a preponderance of the evidence – that his appeal would have prevailed had counsel's performance satisfied constitutional requirements."[32] Our court of appeals distilled the test for prejudice under *Strickland* "is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal."[33]

Mr. Sotelo identifies ten grounds asserting violations of his right to effective assistance of both his trial and appellate counsel: (1) Attorney Erba's representation of Mr. Sotelo as well as prosecution witness Bertin Torres Sanchez created a conflict of interest; (2) trial counsel's failure to request a competency evaluation for Mr. Sotelo at trial while taking pain medication for cancer; (3) trial counsel's failure to raise the defense of impossibility to the indictment's aiding and abetting charge; (4) trial counsel's failure to provide representation on the first day of trial; (5) trial counsel's failure to advise Mr. Sotelo of his right to testify; (6) appellate counsel's failure to appeal a jury instruction; (7) trial counsel's stipulation to drug type and quantity; (8) trial counsel's failure to appeal a violation of the Confrontation Clause; (9) trial counsel's failure to object to the knowing use of perjured testimony; and (10) appellate counsel's failure to appeal hearsay testimony identifying Mr. Sotelo as "Alex."

After careful review of each of his ten grounds, we find Mr. Sotelo fails to meet the high burden under *Strickland* and we deny his motion in the accompanying Order.

6

### 1. We deny the ineffective assistance claim based on a claim of Attorney Erba's conflict of interest.

Mr. Sotelo contends attorney Andrew Erba represented him at trial while also representing a cooperating witness for the United States Bertin Torres Sanchez who testified against Mr. Sotelo, and while Attorney Erba negotiated a plea agreement for Mr. Torres Sanchez. Mr. Sotelo alleges a conflict of interest in Attorney Erba's representation of both him and Mr. Torres Sanchez violates the Sixth Amendment. Mr. Sotelo argues we failed to address "or otherwise make known" to him Attorney Erba's representation of Bertin Torres Sanchez and "abdicated [our] duty under the Sixth Amendment to explain the conflict of interest and seek a waiver of conflict free counsel from [him]." He further argues both Attorney Erba and Attorney Solano hid the conflict from him. In his Declaration attached to his motion, Mr. Sotelo swears he did not know Attorney Erba represented Bertin Torres Sanchez until his wife told him after trial.

The facts do not support Mr. Sotelo's claim. Attorney Erba never represented Mr. Sotelo. The United States brought a criminal complaint against Mr. Torres Sanchez on July 22, 2013.[34] On the same date, our Magistrate Judge appointed Attorney Erba as counsel for Mr. Torres Sanchez under the Criminal Justice Act.[35] Mr. Torres Sanchez entered a guilty plea on November 4, 2014 and Judge Joyner sentenced him on August 30, 2016. Mr. Torres Sanchez is not charged in the same indictment as Mr. Sotelo.

After the May 6, 2015 Superseding Indictment, Mr. Sotelo first appeared before a court in this District on August 11, 2015 represented by Attorney Solano whom Mr. Sotelo privately retained.[36] Mr. Sotelo's wife, Carmelina, also named in the Superseding Indictment, received counsel through the Magistrate Judge's appointment of Attorney Erba under the Criminal Justice Act.

7

On September 15, 2015, Attorney Solano moved for *pro hac vice* admission to this Court. Attorney Erba sponsored Attorney Solano's *pro hac vice* motion. Our Local Rules of Criminal Procedure require attorneys representing a defendant in any criminal matter to file an entry of appearance which must be served on the United States Attorney.[37] Attorney Erba did not file an entry of appearance for Mr. Sotelo. Attorney Erba never appeared as counsel for Mr. Sotelo. He moved the admission of Attorney Solano only.

Attorney Erba's role in this matter relating to Mr. Sotelo is limited to his sponsorship of Attorney Solano's *pro hac vice* motion and his appearance for Mrs. Sotelo in our January 22, 2016 show cause hearing regarding the possible revocation of Attorney Solano's *pro hac vice* admission. At the January 22, 2016 hearing, we questioned Attorney Erba about his role in representing Mr. Sotelo. Attorney Erba explained his involvement as limited to the arraignment of Mr. and Mrs. Sotelo.[38]

Two weeks later, on February 3, 2015, we held a telephonic hearing with Attorney Solano, Mr. Sotelo, and the United States Attorney. At the February 3, 2015 hearing, Mr. Sotelo confirmed, under oath, he intended to continue with Attorney Solano's representation.[39] Mr. Sotelo did not object or disagree when we said Attorney Erba is not Mr. Sotelo's counsel, but responsible to "at least stand up" as the sponsor of Attorney Solano's *pro hac vice* admission.[40]

Thereafter, Attorney Solano appeared at trial, including the intended first day of trial when Mr. Sotelo did not appear. On that date, April 12, 2016, Attorney Solano represented to us his relationship with Mr. Sotelo telling us "[p]ractically every day for the last, at least, thirty days, Mr. Sotelo has come into my office, even as recently as this past Saturday and Sunday, where we sat as we were getting discovery documents"[41] and discussed the plea offer made by the United States Attorney.[42] Attorney Erba did not appear on behalf of Mr. Sotelo on April 12,

8

2016 or any of the eight trial days. Attorney Erba never spoke to the Court or the jury. We did not know of Attorney Erba's representation of Mr. Torres Sanchez in the criminal action against him assigned to Judge Joyner.

Mr. Sotelo has not shown Attorney Erba ever provided legal services or shared confidences with him. Our Magistrate Judges appointed Attorney Erba as Criminal Justice Act counsel for Mr. Torres Sanchez and Mrs. Sotelo. Attorney Solano always represented Mr. Sotelo. Mr. Sotelo never suggested he thought Attorney Erba served as his attorney. Rather, Attorney Erba sponsored Attorney Solano for admission *pro hac vice.* Under our Local Criminal Rules, Attorney Erba represents persons once he enters an appearance. He never entered an appearance for Mr. Sotelo.

Even assuming we ignored our Local Rules and the absence of a relationship between Attorney Erba and Mr. Sotelo, we still have no basis to find an actual conflict.[43] Attorney Erba never appeared or spoke at our trial. He may have counseled his client Mrs. Sotelo from the gallery but no one claims Attorney Erba ever spoke to Mr. Sotelo during trial.

### 2. The ineffective assistance claim based on trial counsel's failure to request a competency evaluation resulting from pain medication is without merit.

Mr. Sotelo contends his cancer required narcotic pain medication, including morphine and Dilaudid, a narcotic analgesic, rendering him incompetent at pre-trial and trial proceedings. He alleges ineffective assistance based on Attorney Solano's failure to request a competency evaluation under 18 U.S.C. § 4241(a). Mr. Sotelo additionally alleges the pain medication prevented his ability to consult with Attorney Solano, to understand the proceedings against him, and to competently assist Attorney Solano in his defense.

Section 4241(a) provides "At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, . . . the defendant or the attorney for the

9

Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, *if there is reasonable cause to believe* that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."[44]

Under the law in this circuit, trial counsel should request a competency evaluation when he has "reason to doubt [his client's] competence to stand trial."[45] If reasonable cause exists to believe the defendant is "unable to understand the nature and consequences of the proceedings against him or assist properly in his defense" due to "mental disease or defect," a district court must grant the motion under § 4241(a).

Mr. Sotelo provides us with no evidence his trial counsel had reason to doubt his competence either at the pre-trial or trial stage. Mr. Sotelo cites to his Declaration attached to the instant motion, swearing during trial he "was on . . . hydro-morphine and morphine every two hours, or as needed"; when administered the medication he is unable to focus or concentrate; "simple tasks like engaging in conversation sometimes becomes problematic," and "often [he] is rendered semiconscious and forgetful."[46] Mr. Sotelo swears he experienced these side effects at trial and "beyond the side effects, I have no recollection of the trial."[47] In his Reply brief, Mr. Sotelo offers the Physicians' Desk Reference on Dilaudid listing the potential adverse reactions as "sedation, drowsiness, mental clouding, lethargy, impairment of mental and physical performance . . . ."[48]

Mr. Sotelo's Declaration is inconsistent with this pre-trial and trial conduct. For example, at our January 22, 2016 show cause hearing, Mr. Sotelo responded to our questions

clearly and competently, providing us with a timeline of his contacts with Attorney Solano.[49] At our February 3, 2016 show cause hearing held by telephone with Attorney Solano, Mr. Sotelo, and the United States Attorney regarding Attorney Solano's continued representation of Mr. Sotelo, Attorney Solano represented to us he had been in constant contact with Mr. Sotelo, speaking to him almost every day.[50] Mr. Sotelo clearly responded to our questions regarding his decision to continue to retain Attorney Solano.[51] Considering this testimony, there is no reasonable cause to believe Mr. Sotelo suffered from a "mental disease or defect rendering him mentally incompetent."

During a colloquy with Mr. Sotelo on the last day of trial regarding his decision not to testify in his defense, Mr. Sotelo had the ability to clearly state and spell his name; correct counsel on his present age; confirm he can read, write, and understand English and Spanish; confirm he understood the proceedings to date; confirm he had no trouble understanding his discussions with counsel regarding testifying in his defense; confirmed through the course of trial he and his counsel continued to discuss the right to testify in his defense; confirmed he understood his Constitutional right to testify, or not testify, in his case and it is his decision; confirmed no one coerced, influenced, or forced him to decide not to testify in his defense; and confirmed he understood the decision not to testify cannot be held against him.[52]

When asked by his counsel specifically about his mental status with regard to his right to testify, Mr. Sotelo testified:

Q. Do you feel like you have any mental health, drug or alcohol problems that are preventing you from fulling understanding this particular right?

A. No.

Q. Do you have any questions or myself or the court with regards to this right?

A. No.[53]

During our colloquy with Mr. Sotelo regarding the United States' plea offer, he exhibited an understanding of the proceedings:

> Q. Mr. Sotelo, did you speak with your attorney concerning the terms of the offer provided to you by the United States?
>
> A. Yes.
>
> Q. Do you believe you thoroughly discussed those terms?
>
> A. Yes.
>
> Q. Are you satisfied you had enough time to discuss those terms with your counsel?
>
> A. Yes.[54]

We find there is no evidence to support a finding Attorney Solano, the United States Attorney, or the Court had reasonable cause to believe at the pre-trial and trial stage Mr. Sotelo "may presently be suffering from a mental disease or defect rendering him mentally incompetent" because his responses to the colloquy show he understood the nature and consequences of the proceedings against him and to assist properly in his defense. Taking a medication such as a narcotic in itself does not show mental incompetence.[55] Mr. Sotelo fails to carry his burden to demonstrate first a deficiency in Attorney Solano's performance and, second, prejudice.

### 3. We deny the ineffective assistance of trial counsel claim based on failure to raise an impossibility defense to the aiding and abetting charge.

Mr. Sotelo argues ineffective assistance of his trial counsel for failing to raise an impossibility defense to Count 14 of the Superseding Indictment. In Count 14 of the Superseding Indictment, the grand jury charged Mr. Sotelo with distributing one or more kilograms of heroin and aiding and abetting and causing the distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)[56] and 18 U.S.C. § 2.[57] Mr. Sotelo argues under the

12

Supreme Court's decision in *Rosemond v. United States*,[58] charging him with both "aiding and abetting" under 18 U.S.C. § 2(a) and "causing" under § 2(b) together for the same act creates a "physical impossibility."

Mr. Sotelo argues § 2(a) and § 2(b) have different *mens rea* requirements; he argues § 2(a) has a *mens rea* requirement while §2(b) does not. Mr. Sotelo points to *Rosemond* to support his argument. Mr. Sotelo argues his counsel's ignorance of the *Rosemond* case satisfies the first part of the *Strickland* test and the merit of the "physical impossibility" defense satisfies the second part of *Strickland*.

Mr. Sotelo misunderstands the statute and the Supreme Court's *Rosemond* decision. Section 2 is the federal aiding and abetting statute imposing liability as a principal on an accomplice who furthers the commission of a federal offense. This section "derives from . . . common-law standards for accomplice liability" and "reflects a centuries-old view of culpability: that a person may be responsible for a crime he has not personally carried out if he helps another to complete its commission."[59] The Supreme Court's decision in *Rosemond* recognized "[t]he common law imposed aiding and abetting liability on a person (possessing the requisite intent) who facilitated any part – even though not every part – of a criminal venture."[60] In *Rosemond*, the Court considered the proof the United States must show when it charges a defendant with aiding and abetting an offense under 18 U.S.C. § 924(c), a statute making it a crime to use or carry a firearm during any crime of violence or drug trafficking crime. [61] The Court held the defendant must have "advance knowledge that a confederate would use or carry a gun during the crime's commission" to be convicted or aiding and abetting a § 924(c) offense.[62] But *Rosemond* does not apply here. The requisite mental state element for aiding and abetting liability requires the United States to prove "the defendant charged with aiding and abetting that

13

crime knew of the commission of the substantive offense and acted with the intent to facilitate it."[63]

Section 2(b) imposes liability on a defendant who "willfully causes" the criminal act of another person.[64] There are two *mens rea* requirements for this offense: (1) a defendant "must possess the *mens rea* required by the underlying criminal statute that the defendant caused the intermediary to violate"; and (2) the defendant must "possess the intent to cause the act prohibited by the underlying statute."[65] "Section 2(b) imposes liability on a defendant who does not himself commit the prohibited *actus reus*, but intentionally manipulates an innocent intermediary to commit the prohibits *actus reus*."[66]

There is nothing in *Rosemond* to create a "physical impossibility" with regard to the *mens rea* elements of each subsection; both require a *mens rea* element. A defendant may aid and abet the commission of a crime under § 2(a) *or* cause another to commit a crime under § 2(b).[67] For example, our court of appeals recognized liability under § 2(a) and as "an aider and abetter under § 2(b) for causing an innocent intermediary to commit a crime." [68] These are alternative theories of liabilities for the same drug transaction and our court of appeals directs district courts to instruct the jury on both aiding and abetting and causing acts of another where the United States alleges a defendant is responsible on alternative theories.[69] We heard evidence showing Mr. Sotelo both aided and abetted and caused the distribution of heroin for the Laredo DTO. We gave both instructions to the jury.[70]

The overwhelming evidence showed Mr. Sotelo's managerial and supervisory role over couriers who transported heroin and its proceeds for the Laredo DTO evidencing his culpability as both "aid[ing] and abet[ing]" and "caus[ing] an act to be done" under 18 U.S.C. § 2(a) and (b). Mr. Sotelo fails to meet his burden under *Strickland* and we deny his motion on this

14

ground.

### 4. The ineffective assistance of trial counsel claim based on failing to provide representation on the first day of trial is without merit.

Mr. Sotelo asserts ineffective assistance based on his trial counsel's failure to protect his right to be present on the first day of trial. There is simply no fact basis for this argument.

In January 2016, we scheduled Mr. Sotelo's trial to begin on Wednesday, April 12, 2016. Mr. Sotelo did not appear on April 12. We discussed with counsel, in open court and on the record, the whereabouts of Mr. Sotelo and the issuance of a bench warrant. During our discussion with counsel on April 12, Attorney Solano received a telephone call from Mr. Sotelo. After taking Mr. Sotelo's call, Attorney Solano stated, on the record, Mr. Sotelo remained in Chicago waiting for the arrival of medication to treat his cancer.[71] Based on Attorney Solano's discussion with Mr. Sotelo, we did not proceed with jury selection at Mr. Sotelo's request or any aspect of a trial.[72] We adjourned until the next day, Thursday, April 13, 2016, when Mr. Sotelo appeared and we began the first day of trial with jury selection. Mr. Sotelo remained for the entire eight days of trial.

Mr. Sotelo fails to meet his burden under *Strickland*, and we deny his petition on this ground.

### 5. The ineffective assistance of trial counsel claim based on failing to advise Mr. Sotelo of his right to testify is without merit.

Mr. Sotelo next argues Attorney Solano failed to advise him of his right to testify, swearing in his Declaration Attorney Solano never told him he had a "right, or even the option, to testify."[73] He swears if he had been advised of his right to testify, and if he had not been under the side effects from medication, he would have testified in his defense denying, among other things, his involvement in the trafficking of heroin and money laundering and his knowing

15

association with persons engaging in illegal activities of any kind.[74] Mr. Sotelo's Declaration in

support of his motion is inconsistent with the colloquy with his counsel on the last day of trial:

> Q. Have you had any trouble understanding the discussions that you and I have had with regards to testifying?
>
> A. No.
>
> Q. Ultimately throughout the course of the two weeks, we have discussed it based upon how the testimony was going, your rights, et cetera, that you have to testify or not testify, correct?
>
> A. Yes.
>
> Q. You understand under the constitution you have the absolute right . . . to testify or not testify but it has got to be your decision, one way or the other. Correct?
>
> A. That's correct.
>
> Q. Nobody is coercing you or influencing you or otherwise forcing you to make the decision not to testify, is that correct?
>
> A. That's correct.
>
> Q. And you understand that that cannot be held against you, correct?
>
> A. Correct.
>
> . . .
>
> Q. You are going to waive your right to testify, correct?
>
> A. Yes.[75]

The colloquy confirms Attorney Solano advised Mr. Sotelo of his right to testify in his

defense. To the extent Mr. Sotelo's argument here is also based on the side effects of his pain

medication and Attorney Solano's failure to determine Mr. Sotelo's mental competency, it is

denied for the reasons discussed above. Mr. Sotelo's claim fails under *Strickland* as there is

neither deficient performance nor prejudice.

16

### 6. The ineffective assistance claim for appellate counsel's failure to object to a jury instruction is without merit.

Mr. Sotelo contends Counts 14 and 20 of the Superseding Indictment charged him with having "caused" the distribution of heroin in violation of 18 U.S.C. § 2, and we did not explain "caused" or provide a correct statement of the applicable law in our jury instructions. Mr. Sotelo asserts ineffective assistance by his appellate counsel, Attorney Diamondstein, for failing to appeal our jury instruction on the "aiding and abetting and caused the distribution of" charge.

Counts 14 and 20 charged Mr. Sotelo "knowingly and intentionally distributed, and aided and abetted and caused the distribution of" one kilogram or more of heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2 (emphasis added).[76] Mr. Sotelo cites to two pages of the transcript of our jury instructions on Counts 14 and 20, but ignores our instructions, several pages later in the transcript explaining "causing."[77] We instructed the jury in both accomplice liability for aiding and abetting under 18 U.S.C. § 2(a) and "causing the criminal acts of another" under 18 U.S.C. § 2(b) using the Third Circuit Model Criminal Charges.[78] Mr. Sotelo's trial counsel did not object to the jury instruction on "causing" in the aiding and abetting charge.[79]

Based on our fulsome charge using the Model Criminal Charges, we find Mr. Sotelo fails under *Strickland* to show deficient performance of his appellate counsel or prejudice.[80]

### 7. The ineffective assistance of trial counsel claim for stipulating to drug type and quantity lacks merit.

Mr. Sotelo next contends ineffective assistance of his trial counsel for stipulating to the drug type and quantity of heroin. At the beginning of trial, Attorney Solano and the United States stipulated to the substances seized by law enforcement as heroin and its quantity. Mr. Sotelo signed each of the stipulations.[81] With consent, the Assistant United States Attorney read

the stipulations to the jury on the last day of trial.[82]

Mr. Sotelo cites to his Declaration swearing Attorney Solano never explained the stipulations; he did not have knowledge about stipulations in general; he pleaded not guilty and went to trial with the intent to challenge every aspect of the United States' case; and, had he been properly advised, he would have rejected the stipulations and fired Attorney Solano.[83] Mr. Sotelo argues the stipulation to heroin and the quantity seized goes to the *mens rea* element of 21 U.S.C. § 841(a)(1), and contends no strategic advantage in the stipulations because it relieved the United States from its burden of proving *mens rea*, thus prejudicing him from challenging knowledge or intent.[84] Mr. Sotelo cites to a portion of the jury charge where we instructed the jury "[t]he possession of a large quantity of drugs may indicate that the defendant knew what he had in his possession"[85] as going to his intent. The portion of the jury charge excised by Mr. Sotelo was contained in the possession with intent to distribute instruction regarding Mr. Sotelo's co-defendant, Francisco Gonzalez Jose.

We begin our *Strickland* analysis with the prejudice prong, an approach endorsed by our court of appeals where consideration of prejudice before examining counsel's performance "makes it 'easier to dispose of an ineffectiveness claim.'"[86] The stipulations did not prejudice Mr. Sotelo because of overwhelming trial testimony regarding the quantity of heroin seized by law enforcement in the DTO scheme. For example, Attorney Solano stipulated to 2.53 kilograms of heroin seized by law enforcement in Texarkana, Texas; 6.225 kilograms of heroin seized in New Orleans, Louisiana; and 7.604 kilograms of heroin seized in Nashville, Tennessee. Special Agent Moynihan, who investigated the Laredo DTO, testified the substance seized from traffic stops was heroin, and specifically testified to the heroin seized in Texarkana, New Orleans, and Nashville.[87] Attorney Solano stipulated to the seizure of 14.65 kilograms of heroin

in Mecklenburg, Virginia. At trial, Virginia State Trooper Matthew Hand testified to his seizure of 30 bricks of heroin, amounting to 16.9 kilograms, introduced into evidence in two boxes and displayed to the jury.[88] Attorney Solano stipulated to 6.951 kilograms of heroin seized in Somerset County, Pennsylvania. At trial, Pennsylvania State Trooper Justin Coda testified to the seizure of 7 kilograms of heroin.[89] Finally, Attorney Solano stipulated to heroin seized from two locations in Philadelphia. At trial, United States witnesses Joseph Torres identified heroin as the drug smuggled in car batteries for the DTO[90] and the quantity of heroin as recorded in Ledgers he maintained as well as heroin he received from Mr. Sotelo in a suitcase with 14 kilograms of heroin at 3901 City Line Avenue and another 34 kilograms of heroin received from another drug cartel connected with Antonio Laredo, as well as heroin located at 1510 Stoney Lane, Philadelphia.[91]

Even assuming Attorney Solano's agreement to stipulate to the quantity of heroin fell below an objective standard of reasonableness, Mr. Sotelo fails to carry his burden to show prejudice. Given the testimony at trial establishing drug type and quantity, Mr. Sotelo cannot show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Accordingly, we deny Mr. Sotelo's motion on this ground.

## 8. The ineffective assistance claim of appellate counsel for failing to appeal a violation of the Confrontation Clause lacks merit.

Mr. Sotelo alleges ineffective assistance by his appellate counsel, Attorney Diamondstein, for failing to appeal violations of the Confrontation Clause by Special Agent Moynihan's testimony. Mr. Sotelo challenges Agent Moynihan's testimony as a violation of the Confrontation Clause complaining (a) testimony identifying Mr. Sotelo as a member of the Laredo cartel and associating the Laredo cartel with the Sinaloa and Los Rojos Mexican cartels

involved in heroin trafficking impermissibly goes to his "general bad reputation or character"[92] and testimony of media reports regarding "El Chapo" constitutes hearsay; (b) testimony regarding the contents of police reports he did not author detailing traffic stops in Texarkana and Nashville where authorities seized drugs is hearsay because Agent Moynihan did not conduct the stops; and (c) testimony regarding statements attributed to Mr. Sotelo's brother disclaiming ownership of money discovery in a raid by Philadelphia police is hearsay.

Mr. Sotelo's arguments fail under *Strickland*. Mr. Sotelo's first challenge is without merit. Special Agent Moynihan's testimony regarding the Sinaloa cartel and "El Chapo," and the Los Rojos cartels does not go to Mr. Sotelo's reputation or character. Special Agent Moynihan's testimony did not refer to Mr. Sotelo's character as an individual; rather, his testimony defined terms the United States expected to use during testimony at trial, terms Special Agent Moynihan learned during his role as the lead investigator in the case. Special Agent Moynihan's testimony regarding the other cartels is not hearsay, as he simply referred to media reports generally and did not testify to the contents of any media reports.[93] Cooperating witnesses Mr. Torres and Mr. Torres Sanchez both testified to the Los Rojos and Sinaloa drug cartels and their experience dealing with the Sinaloa and Los Rojos drug cartels while working with the Laredo DTO.[94]

Mr. Sotelo's second challenge is to Special Agent Moynihan's testimony regarding two police reports detailing the traffic stop and arrest of Giovanni Delgado in Texarkana, Texas and a traffic stop in Nashville, Tennessee both resulting in the seizure of heroin. Mr. Sotelo objects to this testimony as hearsay because Agent Moynihan did not personally conduct the stops. A review of the transcripts show Agent Moynihan did not testify to the contents of police reports in these incidents, but testified to his knowledge of the stops as part of his role in the

20

investigation.[95]  Special Agent Randy Cole testified to his personal knowledge of the Nashville stop.[96]

Mr. Sotelo's third challenge is to Agent Moynihan's testimony regarding statements made in a Drug Enforcement Agency report attributed to Mr. Sotelo's brother, Sabino Sotelo. Mr. Sotelo argues the testimony related to conversations between two non-testifying witnesses and is hearsay. The record does not support the argument. Agent Moynihan testified to the DEA form documenting the seizure of approximately $550,000 in heroin proceeds from a residence occupied by Sabino Sotelo.[97]  The document contains a reference to Sabino Sotelo's statement to DEA agents at the time of the seizure denying ownership, and knowledge of, the money. Agent Moynihan testified to the events of the seizure. Although he was not present at the time of the seizure, he knew DEA agents seized money from the location.[98]  When asked whether law enforcement arrested Sabino Sotelo at the time of the seizure, Agent Moynihan responded Sabino Sotelo was not arrested then because he denied ownership of the money and knowledge of the cash in the residence.[99]  Agent Moynihan, after receiving a report of the seizure and based on his investigation, linked the seized cash to the Laredo DTO and Mr. Sotelo.[100]  There is no hearsay; the United States did not introduce the statement of Sabino Sotelo recorded in the report for its truth and Agent Moynihan only mentioned the statement to explain why Sabino Sotelo was not arrested on the day of the seizure.

There is no merit to Mr. Sotelo's claim of ineffective assistance of appellate counsel. Mr. Sotelo's appellate counsel "cannot be deemed ineffective for failing to raise a meritless claim."[101]  We deny Mr. Sotelo's motion on this ground.

### 9. The ineffective assistance of trial counsel claim for failing to object to the knowing use of perjured testimony lacks merit.

Mr. Sotelo next contends ineffective assistance of his trial counsel for failing to object to "knowing use of perjured testimony" used to convict him. Mr. Sotelo asserts Agent Moynihan perjured himself when he testified the authorities seized $26,000 from Mr. Sotelo's residence. Again citing his Declaration, Mr. Sotelo swears the money seized from his home amounted to $13,000.[102] Mr. Sotelo faults Attorney Solano for failing to "read the discovery material" Mr. Sotelo contends showed only $13,000 seized.

Mr. Sotelo again fails to meet his burden under *Strickland*. Even assuming his trial counsel failed to highlight the discrepancies, if at all, between Agent Moynihan's testimony and documentary evidence regarding the amount seized from Mr. Sotelo's home, he fails to meet his burden on the prejudice prong. Based the overwhelming evidence adduced at trial, Mr. Sotelo fails to show a reasonable probability, but for his trial counsel's errors in the $13,000 difference in the amount of money seized, the result of the proceeding would have been different.

### 10. Ineffective assistance claim of appellate counsel for failure to object to hearsay testimony regarding Mr. Sotelo's nickname of "Alex" lacks merit.

Mr. Sotelo asserts an ineffective assistance of appellate counsel for failing to object to hearsay testimony referring to Mr. Sotelo as "Alex." Although he sat through eight days of trial where his attorney, the United States' attorneys, and witnesses consistently referred to Mr. Sotelo as "Alex," Mr. Sotelo never objected to the use of "Alex" in reference to him. Now, two years after trial, Mr. Sotelo for the first time contends he never used the name "Alex," no one calls him "Alex," his nickname is "Paco," and his name is Alejandro.

During the course of trial, Special Agent Moynihan and cooperating witness Frank Felix Herrera testified to the name "Francisco Alejandro Vielman" in the Ledgers. Special Agent

22

Moynihan testified he never encountered Francisco Alejandro Vielman in the investigation and, when asked by counsel for co-defendant Francisco Gonzalez Jose, if Francisco Alejandro Vielman could be an alias for Mr. Gonzalez Jose, Special Agent Moynihan responded he did not know and was not aware of such an alias for Mr. Gonzalez Jose.[103] Cooperating witness Mr. Felix Herrera testified only to writing down Mr. Vielman's name in a Ledger.[104]

Mr. Sotelo contends the United States accused two people named "Alejandro" of being participants in the Laredo DTO. He asserts ineffective assistance of appellate counsel for failing to raise on appeal there are two people named "Alejandro." Mr. Sotelo concedes his appellate attorney challenged as hearsay the testimony of Special Agent Moynihan and Mr. Torres Sanchez identifying Mr. Sotelo as "Alex" in the Ledgers seized in the investigation, an argument rejected by our court of appeals. But his challenge now is to the use of the Ledgers referring to exchanges of drugs and money made to "Alex," suggesting the other Alejandro is the "Alex" in the Ledgers, not him. Mr. Sotelo argues his counsel's failure to raise the "two Alejandros" issue gave our court of appeals the "misimpression that there was 'just one' [Alejandro] Alex," thus undermining the "confidence in the outcome of the appeal."

There is no merit to this argument. Attorney Solano never developed a "two Alejandros" defense and referred to Mr. Sotelo as "Alex" in pre-trial hearings and throughout the entire trial. In our February 3, 2016 show cause hearing, we referred to Mr. Sotelo as "Alex" to which he did not object.[105] At trial, cooperating witness Gilberto Bautista-Ocampo identified Mr. Sotelo in court as "Alex" and, when specifically asked "And when you say 'Alex,' who do you mean?" Mr. Baustista-Ocampo responded "To Alex Sotelo, to Alejandro Sotelo" and testified to Mr. Sotelo's request Mr. Bautista-Ocampo transport drugs to Pennsylvania concealed in paint cans and return money to Chicago.[106] Cooperating witness Mr. Torres also identified Mr. Sotelo in

court as "Alex." When asked about a stash house Mr. Torres testified

Q. And was that premises used as a stash?

A. Oh, yes. It was a primary location to where we could do business, but Antonio would also send other individuals over there.

Q. When you say "other individuals," who would he send?

A. Alejandro, Alex. I'm sorry. I know him as Alex. I didn't know his name was Alejandro.

Q. You are referring to the defendant Alejandro Sotelo?

A. Yes (indicating).

Q. You just pointed him out in the courtroom?

A. Yes.[107]

Mr. Torres further identified Mr. Sotelo as having first met him to pick up money (heroin proceeds) from drug sales in Philadelphia. Mr. Torres maintained Ledgers reflecting transactions attributed to "Alex." Mr. Torres also testified he knew only one "Alex" in the DTO, explaining he used the name "Alex" in the Ledgers and "Alejandro" to make deposits into Mr. Sotelo's bank account.[108] Cooperating witness Osmar Flores also identified Mr. Sotelo in the courtroom as "Alex."[109] Given this, and other evidence not repeated here but replete in the record, Mr. Sotelo is "Alex." We deny Mr. Sotelo's motion on this ground.

## III. Conclusion

Mr. Sotelo fails to meet his burden under *Strickland*. We deny his motion under 28 U.S.C. §2255 in the accompanying Order.

---

[1] Our previous opinions addressing post-trial motions detailed the evidence. *See* Memorandum denying Mr. Sotelo's motion for release (ECF Doc. No. 862); Memorandum denying Mr. Sotelo's Motion for acquittal or for a new trial (ECF Doc. No. 923). We only include background relevant to this motion seeking relief based on ineffective assistance of counsel.

[2] ECF Doc. No. 23.

[3] ECF Doc. No. 281.

[4] ECF Doc. No. 264.

[5] ECF Doc. No. 332.

[6] *Id.*

[7] January 22, 2016 Transcript ("Tr.") at 7 (ECF Doc. No. 1103).

[8] ECF Doc. No. 381.

[9] February 3, 2016 Tr. at 7 (ECF Doc. No. 1104).

[10] *Id.* at 9-11.

[11] ECF Doc. No. 331. We tried Mr. Sotelo along with co-defendant Francisco Gonzalez Jose.

[12] April 12, 2016 Tr. at 4-6 (ECF Doc. No. 831).

[13] April 13, 2016 Notes of Testimony ("N.T.") at 13 (ECF Doc. No. 843).

[14] April 18, 2016 N.T. at 240-243, 272-273 (ECF Doc. No. 846); April 19, 2016 N.T. at 67 (ECF Doc. No. 847).

[15] The jury found Mr. Sotelo guilty on Counts 1, 2, 14, and 44, and acquitted him on Count 20. ECF Doc. Nos. 565, 927.

[16] ECF Doc. No. 519.

[17] April 22, 2016 N.T. at 214 (ECF Doc. No. 850).

[18] ECF Doc. No. 564.

[19] ECF Doc. Nos. 628, 841.

[20] ECF Doc. No. 832.

[21] ECF Doc. No. 858.

[22] ECF Doc. No. 923.

[23] ECF Doc. No. 927.

[24] ECF Doc. No. 1066.

[25] ECF Doc. No. 1067.

[26] *Strickland v. Washington*, 466 U.S. 668 (1984).

[27] *Id.* at 687; *United States v. Washington*, 869 F.3d 193, 204 (3d Cir. 2017).

[28] *Washington*, 869 F.3d at 204 (quoting *United States v. Travillion*, 759 F.3d 281, 289–90 (3d Cir. 2014)).

[29] *United States v. Vaskas*, 696 F. App'x 564, 566 (3d Cir. 2017) (quoting *Strickland*, 466 U.S. at 688).

[30] *Strickland*, 466 U.S. at 689.

[31] *Vaskas*, 696 F.App'x at 566 (quoting *Strickland*, 466 U.S. at 694).

[32] *U.S. v. Schwartz*, 925 F.Supp. 2d 663, 685 (E.D. Pa. 2013) (quoting *U.S. v. Cross*, 308 F.3d 308, 315 nn. 11-12 (3d Cir. 2002)).

[33] *Id.* (quoting *U.S. v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000)).

[34] *U.S. v. Torres*, No. 13-cr-412. The Clerk randomly assigned the *Torres* case to the Honorable J. Curtis Joyner. The criminal complaint also named as defendants Joseph Torres, Euddy Izquierdo, Frank Felix-Herrera, Jeudy Mena, Leandro Rodriguez-Urena, and Ronny Espinal.

[35] *U.S. v. Torres*, No. 13-cr-412 at ECF Doc. No. 18.

[36] ECF Doc. No. 266.

[37] Local Rule of Criminal Procedure 44.1 provides "An Attorney representing a defendant in any criminal proceedings pending in this Court shall file an appearance . . .. A copy of the appearance shall be served on the United States Attorney. The appearance must be filed prior to or simultaneously with the initial Court appearance or the filing of any motion, brief or other document with this Court, whichever occurs first. This appearance shall constitute a representation to the Court that counsel so appearing shall represent the defendant until final disposition of the case in this Court. No appearance may be withdrawn except by leave of Court."

[38] January 22, 2016 Hearing at 8-9 (ECF Doc. No. 1103).

[39] February 3, 2016 Hearing at 8-11 (ECF Doc. No. 1104).

[40] *Id.* at 9-10.

[41] April 12, 2016 Tr.. at 4 (ECF Doc. No. 831).

[42] *Id.* at 33.

[43] "An actual conflict claim arises after trial upon the discovery of a previously unnoticed conflict of interest on the part of trial counsel." *U.S. v. Morelli,* 169 F.3d 798, 810 (3d Cir. 1999). Where a defendant did not object to a conflict at trial, he "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980)). Our court of appeals recognizes an actual conflict "is more likely to occur in cases of joint representation – representation of more than one defendant at the same trial – rather than simply multiple representation – representation of defendants in different trials . . .." *Id.* Defendant must show an actual conflict by two elements: "[f]irst he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Id.* (citing *U.S. v. Gambino,* 864 F.2d 1064, 1010 (3d Cir. 1988)). If a defendant establishes an actual conflict, he need not establish prejudice. *Id.* at 810 (citing *Strickland,* 466 U.S. at 692). If a defendant cannot show an actual conflict, he may still bring "a conventional ineffective assistance claim under *Strickland,* but [he] must then show prejudice." *Id.* at n.15 (citing *Hess v. Mazurkiewicz,* 135 F.3d 905, 910 (3d Cir. 1998)). Here, Mr. Sotelo does not tell us how Attorney Erba's representation of him, even if he did so, as well as Mr. Torres Sanchez in the criminal action before Judge Joyner, created a conflict and does not identify "some plausible alternative defense strategy or tactic" Attorney Erba "might have . . . pursued" and the defense "was inherently in conflict with or not undertaken due to" Attorney Erba's loyalties to Mr. Torres Sanchez.

[44] 18 U.S.C. § 4241(a) (emphasis added).

[45] *Cherys v. U.S.,* 552 F.App'x 162, 167 (3d Cir. 2014) (quoting *U.S. v. Haywood,* 155 F.3d 674, 680 (3d Cir. 1998)).

[46] Declaration at ¶¶ 8-10 (ECF Doc. No. 1078).

[47] *Id.* at 10.

[48] Reply brief at 5, Ex. A (ECF Doc. No. 1117).

[49] January 11, 2016 Tr. at 4-7, 11 (ECF Doc. No. 1103).

[50] February 3, 2016 Tr. at 7-8 (ECF Doc. No. 1104).

[51] *Id.* at 8-11.

[52] April 22, 2016 N.T. at 219-221 (ECF Doc. No. 850).

[53] *Id.* at 220.

[54] April 13, 2016 N.T. at 7-8 (ECF Doc. No. 843).

[55] *U.S. v. Jackson*, Crim. No. 04-87, Civ. No. 06-3935, 2006 WL 3333833, at * 3 (E.D. Pa. Nov. 15, 2006) (citing *Layne v. Moore*, 90 F.App'x 418, 423 (3d Cir. 2004)) (finding use of psychotropic medications at change of plea hearing did not render defendant mentally incompetent and unable to understand proceedings).

[56] 21 U.S.C. §841(a)(1) makes it unlawful "for any person knowingly or intentionally – (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . .." Section 841(b)(1)(A) sets out the penalties for violations of § 841(a).

[57] 18 U.S.C. § 2(a) provides "Whoever commits an offense against the United States or *aids, abets*, counsels, commands, induces or procures its commission, is punishable as a principal" (emphasis added).

Section 2(b) provides "Whoever willfully *causes an act to be done* which if directly performed by him or another would be an offense against the United States, is punishable as a principal" (emphasis added).

[58] --- U.S. ---, 134 S.Ct. 1240, 188 L.Ed.2d 248 (2014).

[59] *Rosemond*, 134 S.Ct. at 1245 (citing J. Hawley & M. McGregor, Criminal Law 81 (1899)).

[60] *Id.* at 1246.

[61] *Id.* at 1243.

[62] *Id.*

[63] *U.S. v. Carbo*, 572 F.3d 112, 118 (3d Cir. 2009) (citing *U.S. v. Kemp*, 500 F.3d 257, 293 (3d Cir. 2007)).

[64] Congress enacted § 2(b) "to remove any doubt that [it] intended that one who causes the commission of an indispensable element of an offense against the United States by an innocent agent or instrumentality be guilty as a principal" and amended the statue to include in the scope of criminal responsibility "one who, although lacking criminal capacity himself, manipulates another to commit a crime," and "abolishes the common law distinction between principal and accessory." *U.S. v. Am. Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1094 (3d Cir. 1989) (citations omitted).

[65] *U.S. v. Gumbs*, 283 F.3d 128, 134 (3d Cir. 2002).

[66] *Id.* at 134-35 (citations omitted).

[67] *U.S. v. Krogstad*, 576 F.2d 22, 29 (3d Cir. 1978).

[68] *U.S. v. Wasserson*, 418 F.3d 225, 233 (3d Cir. 2005) (citing *U.S. v. Am. Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1094-95 (3d Cir. 1989) (footnote omitted)).

[69] *See* Comment to § 7.05 Third Circuit Model Criminal Jury Charges.

[70] April 22, 2016 N.T. at 339-346 (ECF Doc. No. 850).

[71] April 12, 2016 Tr. at 19 ( ECF Doc. No. 831).

[72] *Id.* at 35, 37.

[73] Declaration at ¶ 11 (ECF Doc. No. 1078).

[74] *Id.* at ¶ 12.

[75] April 22, 2016 N.T. at 219-220 (ECF Doc. No. 850).

[76] As noted above, 18 U.S.C. § 2(a) provides "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal" and § 2(b) provides "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

[77] April 22, 2016 N.T. at 332-333 and 339-346 (ECF Doc. No. 850).

[78] Third Circuit Model Criminal Charges at §§ 7.02, 7.05; April 22, 2016 N.T. at 339-342, 344-346 (ECF Doc. No. 850).

[79] *See* ECF Doc. No. 519 at ¶ 1 ("The defendant received Jury Instructions, Voir Dire Questions, and Verdict Forms from the US Attorney's Office and accepts them as is without any additions, deletions or modifications"); April 22, 2016 N.T. at 31-33 (ECF Doc. No. 732).

[80] As noted earlier, the jury acquitted Mr. Sotelo on Count 20.

[81] Government's Exhibits 356-362 (ECF Doc. No. 1108-1).

[82] April 22, 2016 N.T. at 208-210 (ECF Doc. No. 850).

[83] Declaration at ¶¶ 13-14 (ECF Doc. No. 1078).

[84] Section 841(a)(1) makes it unlawful "for any person knowingly or intentionally – (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . ."

[85] April 22, 2016 N.T.at 330 (ECF Doc. No. 850).

[86] *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 n.10 (3d Cir. 2017) (quoting *Strickland*, 466 U.S. at 697)). *See also Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 477 (3d Cir. 2017) ("On habeas review, we may begin and, when dispositive, end with either of *Strickland*'s two prongs, . . . and here we follow 'the practical suggestion in *Strickland* that we . . . consider the prejudice prong before examining the performance of counsel prong' because that approach is 'less burdensome to defense counsel,' and makes it 'easier to dispose of [the] ineffectiveness claim, . . ..'") (internal citations omitted).

[87] April 14, 2016 N.T. at 10-11, 16, 39-44, 74, 77-78, and 84 (ECF Doc. No. 844).

[88] April 18, 2016 N.T. at 7-20 (ECF Doc. No. 846).

[89] April 19, 2016 N.T. at 214-227 (ECF Doc. No. 847).

[90] April 18, 2016 N.T. at 182-187 (ECF Doc. No. 846).

[91] April 18, 2016 N.T. at 202-203 (ECF Doc. No. 846); April 19, 2016 N.T. at 17-31 (ECF Doc. No. 847).

[92] Although he does not indicate, we construe Mr. Sotelo's challenge to Special Agent Moynihan's testimony regarding the Sinaloa and Los Rojos cartels as an impermissible attack on his character in violation of Federal Rule of Evidence 404(b). Rule 404(b) prohibits the use of "evidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

[93] April 14, 2016 N.T. at 23-24 (ECF Doc. No. 844).

[94] April 18, 2016 N.T. at 153-155 (ECF Doc. No. 846); April 19, 2016 N.T. at 21 (ECF Doc. No. 847); April 20, 2016 N.T. at 112-113, 133, 150 (ECF Doc. No. 848).

[95] April 14, 2016 N.T. at 40-44; 84-87 (ECF Doc. No. 844).

[96] April 15, 2016 N.T. at 183-187 (ECF Doc. NO. 845).

[97] Government Exhibit 96.

[98] April 14, 2016 N.T. at 82 (ECF Doc. No. 844).

[99] *Id.*

[100] *Id.* at 83.

[101] *Ross v. Dist. Attorney of the Cnty. of Allegheny*, 672 F.3d 198, 211 n.9 (3d Cir. 2012) (quoting *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000)).

[102] Declaration at ¶ 15 (ECF Doc. No. 1078). Despite swearing to only $13,000 seized from his home, Mr. Sotelo attaches to his Reply brief a receipt from the Department of Justice showing $14,918.00 in United States currency seized from his West Chicago home. *See* Reply brief at Exhibit B (ECF Doc. No. 1117).

[103] April 15, 2016 N.T. at 90, 95, 152-153 (ECF Doc. No. 845).

[104] April 21, 2016 N.T. at 119 (ECF Doc. No. 851).

[105] February 3, 2016 Tr. at 6, 9 (EFC Doc. No. 1104).

[106] April 19, 2016 N.T. at 301-303 (ECF Doc. No. 847); April 20, 2016 N.T. at 8-32 (ECF Doc. No. 848).

[107] April 18, 2016 N.T. at 148 (ECF Doc. No. 846).

[108] April 19, 2016 N.T. at 184-195 (ECF Doc. No. 847).

[109] April 21, 2016 N.T. at 194 (ECF Doc. No. 851).