# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :

    v.                                       :   CRIMINAL NO. 14-652-06

ALEJANDRO SOTELO                 :

### GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION
### TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

This case presents a stark and uncomfortable question. Defendant Alejandro Sotelo committed a heinous offense, acting as a leader in the distribution of hundreds of kilograms of heroin, which doubtlessly caused widespread agony and even death to others. He was sentenced to a term of imprisonment of 17½ years, and has served just over three years of that term. Now, he is dying of cancer. He was diagnosed with cancer at the time he was trafficking in heroin, and he persisted in that conduct regardless. He suffered from cancer at the time he was sentenced in 2016, and this Court elected to impose the 210-month sentence. He has now reached what doctors advise is the last year, perhaps months, of his life. And so the question is: Should Mr. Sotelo die in prison? Upon considering all of the pertinent factors, the government must recommend that this question be answered in the affirmative and the motion for compassionate release be denied.

Sotelo, who will turn 45 in July 2019, played what this Court described as a "central role" in the Mexico-based Laredo Drug Trafficking Organization (DTO), which endeavored from 2008 to November 2014 to import and distribute over 1,000 kilograms of heroin in Philadelphia and launder millions of dollars in heroin proceeds. This Court recently summarized: "The grand jury charged a conspiracy based on both importing and distributing heroin and then structuring the return of millions of dollars in illegal heroin proceeds through money laundering. Mr. Sotelo, based in Chicago, performed both roles in the conspiracy at a high level; the grand jury charged him with heroin trafficking through, among other things, receiving monthly shipments of heroin from Mexico, storing the heroin shipments in Chicago until directed by his long-time friend Antonio Laredo to deliver heroin to the Philadelphia area for distribution, and transferring money to Mexico to conceal and launder the illegal heroin sale proceeds." *United States v. Sotelo*, 2018 WL 2994384, at *1 (E.D. Pa. June 14, 2018).

Sotelo was responsible for transporting the Laredo DTO's heroin from Mexico to Sotelo's hometown of West Chicago, Illinois, and coordinating both the delivery of the heroin to Philadelphia and the return of the proceeds to the DTO. Sotelo recruited drivers and couriers who delivered multiple-kilogram shipments of heroin to the Philadelphia area, and picked up proceeds from the sale of that heroin. The proceeds typically ranged from $100,000 to $300,000 per trip, sometimes aggregating up to $500,000 at a time. The drivers and couriers

typically received $5,000 in cash for their services. Sotelo used his house in Illinois to store heroin-laden car batteries that had been driven from Mexico, and that would later be used to transport heroin to Philadelphia. Sotelo also used homes he was remodeling to secrete drugs and proceeds. At one point, Sotelo traveled to Philadelphia once or twice a month. Besides recruiting couriers, Sotelo himself also transported concealed heroin from Mexico into the United States and himself collected hundreds of thousands of dollars of bulk proceeds and delivered them from the United States to Mexico, all at the direction of DTO leader Antonio Laredo. In addition to his role as the DTO's primary money courier, Sotelo further facilitated the DTO's money laundering operation by utilizing his own "funnel accounts," and delivering cash to other DTO associates to make Western Union wire transfers. In conducting these activities, Sotelo directed and controlled other DTO associates, and communicated directly with his close friend and the DTO kingpin, Antonio Laredo. All of this continued for a number of years *after*, according to Sotelo, he was diagnosed in 2010 with stomach and liver cancer. PSR ¶ 95.

Sotelo went to trial and was convicted of conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 21 U.S.C. §§ 964, 960(b)(1)(A) (Counts 1 and 2); two counts of aiding and abetting and causing the distribution of one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (Counts 14 and 20); and money laundering, in

violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count 44). He was sentenced on September 6, 2016.

He was held responsible for at least 90 kilograms of heroin, and conspiring to launder at least $6,000,000 of drug proceeds to the Laredo organization. Sotelo had no criminal history points from a 1995 conviction for obstructing justice and a 1994 conviction for carrying a firearm in a public place. Based on an offense level of 43, which included an enhancement for being an organizer/leader within the criminal organization, and a criminal history category of I, the advisory Sentencing Guidelines recommended a sentence of life imprisonment. The Court sentenced Sotelo to 210 months of imprisonment.

At sentencing, the defense sought leniency on the basis of Sotelo's health. He had been diagnosed with cancer in 2010. The government argued that Sotelo's condition had stabilized with treatment, and that it was premature to deal with any kind of compassionate release argument because he was not in palliative care. The Court agreed that at the time of the sentencing Sotelo was not yet in the extraordinary circumstances in which compassionate release should be considered. The Court specifically found that if Sotelo's medical condition greatly worsened, he could apply for compassionate release. But the Court also took Sotelo's health into account in significantly varying from the guideline range.

Sotelo filed an appeal. On appeal, Sotelo argued that, due to his health, the sentence of incarceration violated the Eighth Amendment prohibition on cruel and unusual punishment. The Third Circuit denied that claim, and also declined

- 4 -

to consider this Court's discretionary decision not to depart. *United States v. Sotelo*, 707 F. App'x 77, 90-91 (3d Cir. 2017). Sotelo's subsequent habeas motion was denied. At present, Sotelo's anticipated release date is July 16, 2031.

Sotelo has been in custody since April 22, 2016, and thus as of this writing has served 38 months of the 210-month sentence.

Sotelo sought compassionate release from the Bureau of Prisons almost immediately upon beginning his sentence. BOP denied the request on April 5, 2017, stating that Sotelo engaged in serious criminal conduct and his medical condition was known and considered at sentencing just months earlier. Next, in March 2018, the institution summarily denied a renewed request, advising Sotelo that he could pursue an administrative remedy, which he apparently elected not to pursue.

On January 7, 2019, Sotelo filed a motion in this Court for compassionate release, under 18 U.S.C. § 3582(c)(1)(A) (docket no. 1173). The government objected, on the grounds that BOP's last decision on the matter was reported nearly two years earlier, and Sotelo had not made a timely new request for administrative action. On January 30, 2019 (docket no. 1180), the Court denied Sotelo's motion without prejudice "to be renewed after: (1) submitting a fulsome request to the Bureau of Prisons allowing it to evaluate his current circumstances; and, (2) seek relief from this Court should the Bureau of Prisons deny his new request or not respond within thirty days after presenting his new request."

Sotelo presented a new administrative request. On April 9, 2019, the Bureau of Prisons denied his request that it file on his behalf a motion for compassionate release. The Acting General Counsel of BOP advised that Sotelo qualified for consideration, given that he is suffering from a terminal illness, but added: "However, in light of the nature and circumstances of Mr. Sotelo's offense, his release at this time would minimize the severity of his offense and pose a danger to the community."

Sotelo then presented a counseled motion to this Court for release, to which the government responds here.

Sotelo has terminal stage IV gastrointestinal stomal tumor with metastasis to the abdomen and liver. According to the Bureau of Prisons medical staff, as of February 12, 2019, he had a life expectancy of less than six months. The oncologist's treatment plan, on June 10, 2019, stated as follows:

> Unfortunately Mr. Sotelo is approaching the terminal cliff. I explained to him that further therapy would not likely be beneficial and would likely lead to more toxicity. I strongly recommend supportive measures with hospice. Prognosis is grave. Hopeful RIS [Reduction in Sentence] soon.

The February 2019 medical summary indicated that Sotelo's ability to function independently had been significantly reduced, that he has chronic pain, and that he is confined to a bed or wheelchair most of the day. The medical reports in June 2019 also note that he has multiple large masses, extensive metastasis, severe hand and foot disease, and weakness.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Accordingly, the relevant policy statement of the Commission is binding on the Court. *See Dillon v. United States,* 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).[1]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Critically, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

---

[1] Prior to the passage of the First Step Act, while the Commission policy statement was binding on the Court's consideration of a motion under § 3582(c)(1)(A), such a motion could only be presented by BOP. The First Step Act added authority for an inmate himself to file a motion seeking relief, after exhausting administrative remedies, or after the passage of 30 days after presenting a request to the warden, whichever is earlier.

Under the law, the inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon*, 560 U.S. at 827-28 (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification).

(A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)    Family Circumstances.—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)    Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

> compelling reason other than, or in combination with, the reasons
> described in subdivisions (A) through (C).

For its part, consistent with note 1(D), BOP promulgated Program Statement

5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf,

amended effective January 17, 2019, to set forth its evaluation criteria.

In general, the defendant has the burden to show circumstances meeting

the test for compassionate release. *United States v. Heromin,* 2019 WL 2411311,

at *2 (M.D. Fla. June 7, 2019). As the terminology in the statute makes clear,

compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019

WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

Sotelo presents sufficient extraordinary and compelling circumstances, in

that he "is suffering from a terminal illness (i.e., a serious and advanced illness

with an end of life trajectory)," as set forth in note 1(A)(i). Under the statute, that

leaves this Court with discretion to decide whether to release the defendant, upon

consideration of all pertinent factors.

The government recommends against release. It may be, as the defense

states, that Sotelo did not engage in acts of violence, and is unlikely to be able to

continue his criminal conduct at this time, but the crime he committed was

substantial and significantly harmful. Over the course of many years, he played a

leadership role in the distribution in the United States of a staggering amount of

heroin (over 1,000 kilograms). And notably, he continued to do this for years

- 10 -

*after* he was diagnosed with cancer.[2] In these circumstances, it would markedly denigrate the nature of the offense, and "the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2), to permit the release of the defendant after he served only a bit over three years of a sentence that the Sentencing Commission recommended should be life imprisonment, and that this Court viewed as appropriately set at 210 months.[3]

In response, the defense cites earlier criticism of the Bureau of Prisons for its limited consent to compassionate release in past years. Motion at 6. That, however, is not pertinent here. In the First Step Act, passed on December 21, 2018, Congress made clear its intent to expand access to the courts for consideration of compassionate release. And indeed, during 2019, the BOP itself

---

[2] The Commission states in § 1B1.13 application note 2: "For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." This case, however, presents a much more extreme and disturbing situation, in which the extraordinary reason – the petitioner's illness – was known not just at the time of sentencing but while he committed the years-long crime.

[3] At sentencing, this Court observed that it had never heard Sotelo express any remorse. In the motion for compassionate release, defense counsel states, "Mr. Sotelo has reflected on his actions and acknowledged the mistakes he made and the harm his involvement in the narcotics trade caused. He also has reflected on what led him to make poor life choices. Sadly, when faced with very little life left to live, his respect for life has been renewed." Motion at 8. Sotelo himself has made no such statement to the Court.

has recommended compassionate release in a greater number of cases than its previous rate, and the undersigned have consented to the release of several inmates in this district alone. But Congress maintained the discretion of the Court to make the final determination, consistent with the Sentencing Commission's policy statement. In this particular case, where the defendant committed a grievous offense, in a leadership role, during the time he suffered from the illness on which he now premises his request, we submit that compassionate release should not be granted and the defendant's motion should be denied.

Respectfully yours,

WILLIAM M. McSWAIN
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been served on the Filing

User identified below through the Electronic Case Filing (ECF) system:

Elizabeth Toplin, Esq.
Federal Community Defender Office
  for the Eastern District Of Pennsylvania
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA  19106


/s Robert A. Zauzmer
ROBERT A. ZAUZMER
Assistant United States Attorney


Dated:  July 8, 2019.