**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 14-652-6 |
| | : | |
| ALEJANDRO SOTELO | : | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
HIS MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(i)**

The last time Alejandro Sotelo visited his prison oncologist on June 10, 2019, Dr. Andres Carden wrote:

> Plan: Unfortunately Mr. Sotelo is approaching the terminal cliff. I explained to him that further therapy would not likely be beneficial and would likely lead to more toxicity. I strongly recommend supportive measures with hospice. Prognosis is grave. Hopeful RIS [reduction in sentence] soon.

Supplemental Treatment Records from 4/22/19 Onward, attached here to as "Exhibit A." As the government pointed out, Mr. Sotelo's June treatment notes also indicate he has multiple large masses, extensive metastasis, severe hand and foot disease, and chronic pain and weakness. The records show his condition continues to worsen. It is significant that Mr. Sotelo's own doctor, who is in closest contact with him and intimately familiar with the severity of his illness, hopes he will be released soon so he can spend his final days with his family. This Court should find under the circumstances of this case that Mr. Sotelo deserves that dignity.

At oral argument, counsel for the government correctly stated Mr. Sotelo's terminal diagnosis presents "compelling and extraordinary circumstances" under the First Step Act and Sentencing Guidelines, thereby rendering him eligible for compassionate release if the Court deems him fit. The government's sole argument is that he does not deserve to be released. Mr.

Sotelo respectfully submits release will not thwart any of the purposes of sentencing; rather, it would send a message that federal sentencing policy is not only just, but also humane.

The Court raised a number of pertinent questions at oral argument. Since the hearing, counsel has conferred with Mr. Sotelo and his wife, Camerina Sotelo. Mr. Sotelo's wife and mother plan to take care of him in the family home.[1] On information and belief, their plan is to take Mr. Sotelo to a clinic so he can see an oncologist; they will take him to the hospital if need be. Whether and when any hospice care will be pursued remains to be seen. It seems to be Mr. Sotelo's desire to spend his last days at home unless his situation becomes too dire and hospitalization becomes necessary.

This Court should not have any significant fear that Mr. Sotelo will flee the country to Mexico. As the Presentence Report indicates, Mr. Sotelo immigrated to the United States from Mexico in 1987 to be with his mother, Eva Cruz, who had been living in Illinois since the early 1980's. Mr. Sotelo's wife, Camerina, resides nearby in West Chicago, Illinois. They have two minor children, Ilene and Anthony Sotelo. Mr. Sotelo also has one surviving child from a previous relationship, Alexis Sotelo, who at the time of sentencing was residing with his mother. PSR ¶¶ 90-93. Mr. Sotelo spends 80% of his time in bed and the other 20% in a wheelchair. He lacks the physical capacity to flee or endanger the public. More importantly, Mr. Sotelo's most significant familial ties are in the Chicago metropolitan area where he has resided for more than thirty years. He has no incentive to flee. His only desire is to spend his last days with his wife, children and mother.

---

[1] A copy of the Reduction in Sentence Release Plan Review conducted by Licensed Clinical Social Worker K. Wehr is attached as "Exhibit B."

Granting Mr. Sotelo's compassionate release motion would not set binding precedent or create any bright line rules. As government counsel aptly stated at oral argument, the First Step Act's directs the Court to consider the 18 U.S.C. § 3553(a) factors and relevant Sentencing Commission policy statements; as such, compassionate release cases are not likely to give rise to bright line rules because each case must be evaluated based on the petitioner's crime of conviction and the facts and circumstances of the case. The government has pointed to no relevant policy statements – nor is the defense aware of any – that would preclude Mr. Sotelo's release. To the contrary, the relevant policy statement renders him eligible for release due to his extraordinary and compelling circumstances.

Mr. Sotelo's release would not endanger any other person or the community at large. Mr. Sotelo is physically incapable of committing crimes that would harm the public. Although he was diagnosed with cancer at the time he committed the instant offense and was deemed terminal at sentencing, his condition has deteriorated significantly since he has been incarcerated. Since sentencing, Mr. Sotelo has received multiple chemotherapy treatments to the point that further treatment would not be beneficial and would result in more toxicity. Even if he was sick at the time of sentencing, his disease has unfortunately progressed to a degree that it is essentially untreatable and the only avenues left are palliative care. Any hope of a recovery that may have existed at the time he committed his crime and at sentencing is, unfortunately, gone.

Granting Mr. Sotelo's motion would not frustrate the general deterrence or "respect for the law" purposes of sentencing. It is well-established that the *certainty* of punishment, not the *severity* of it, has the most significant general deterrent effect. *See*, *e.g.*, CESARE BECCARIA, ON CRIMES AND PUNISHMENTS AND OTHER WRITINGS 63 (Richard Bellamy, ed.; Richard Davis, trans., Cambridge University Press 1995) (1764); Frank H. Easterbrook, *Criminal Procedure as*

*a Market System*, 12 LEGAL STUD. 289, 295 & n.7 (1983); Alfred Blumstein, *Prison*, in CRIME 387, 408-409 (Wilson & Petersilia, eds., 1995); Daniel S. Nagin & Greg Pogarsky, *Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence*, 39 CRIMINOLOGY 865 (2001); Michael Tonry, *The Functions of Sentencing and Sentencing Reform*, 58 STAN. L. REV. 37, 52-54 (2005); Raymond Paternoster, *How Much do we Really Know about Criminal Deterrence?*, 100 J. CRIM. L. & CRIMINOLOGY 765, 818 (2010) ("The safest conclusion from the literature thus far would be that the perception of certain legal and extralegal sanctions does seem to act as a modest deterrence factor, but that the perceived severity and celerity of punishment do not appear to be effective deterrents to crime, and we know virtually nothing about celerity.").

There are no hypothetical people considering becoming drug dealers who might hear about Mr. Sotelo being released and decide it worthwhile to go ahead and commit crimes because of the possibility of compassionate release if they later become terminally ill. The fact that Mr. Sotelo has served roughly 38 months of his sentence is a significant punishment that would be sufficient for any rational thinker to be deterred if they are inclined weigh the costs and benefits of narcotics trafficking. More importantly, compassionate release sends a message to the public that the justice system is also merciful, and that individuals whose crimes are not the most heinous can be extended the grace and dignity of ending their life at home with their families when they do not present a significant danger to the public, like Mr. Sotelo.

At the time of Mr. Sotelo's sentencing, he had zero criminal history points. PSR ¶ 83. He had two prior arrests giving rise to cases for carrying a firearm in public and obstructing justice that resulted in a conditional discharge and one year of supervision. Both of these cases are remote in time, occurring in 1994 and 1995 when Mr. Sotelo was 20 and 21 years old,

respectively.  PSR ¶¶ 81-82.  Neither of these stale offenses were for the same drug trafficking or money laundering conduct this Court sentenced Mr. Sotelo for and neither involved violence.  Mr. Sotelo's role in the current offense involved no violence and no weapons possession.  And, as noted above, Mr. Sotelo lacks the physical capacity to engage in a similar crime now that his health has deteriorated significantly during his 38 months of incarceration.[2]

As noted at oral argument, Mr. Sotelo will still serve a five-year term of supervised release if his motion is granted.  The Court can impose whatever conditions are necessary and appropriate in its view.  To the extent Mr. Sotelo's health conditions make compliance impossible his U.S. Probation Officer can petition the court for a modification if necessary.

Mr. Sotelo has now served a significant prison sentence for a man who has never done any prison time.  Despite being terminally ill, he has engaged in substantial programming in the prison and has committed himself to his faith.  He delivered a powerful statement of remorse at the hearing before this Court.  Although some other defendants have sought compassionate release after serving larger percentages of their total sentences, Mr. Sotelo had no control over when his prognosis became so grave.  The government's opposition is largely based on Mr. Sotelo's offense conduct, which he does not in any way seek to minimize.  Nevertheless, the defense respectfully submits that Mr. Sotelo has demonstrated under the facts of his case that compassionate release is appropriate.  Accordingly, Mr. Sotelo asks that the Court have mercy on him and grant his Motion.

Respectfully submitted,

*/s/ Elizabeth L. Toplin*
ELIZABETH L. TOPLIN
Assistant Chief, Trial Unit

---

[2] Some of the Section 3553(a) factors, such as any need for vocational training, are wholly irrelevant due to Mr. Sotelo's terminal diagnosis.

## **CERTIFICATE OF SERVICE**

      I, Elizabeth L. Toplin, Assistant Chief, Trial Unit, hereby certify that the foregoing was served upon Robert Zauzmer, Chief of Appeals, via Electronic Case Filing to the United States Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

                                  */s/ Elizabeth L. Toplin*
                                  ELIZABETH L. TOPLIN
                                  Assistant Chief, Trial Unit

Date:   July 23, 2019